# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD HAZELETT, | ) | CASE NO. 5:15-cv-2201 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| DENNIS DAY LAGER, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is a motion for partial judgment on the pleadings filed by defendants Dennis Day Lager, Portage County Board of Commissioners and Portage County Public Defender Commission (Doc. No. 16 ["Mot."]), plaintiff's memorandum in opposition (Doc. No. 17 ["Opp'n"]), and defendants' reply (Doc. No. 18 ["Reply"]). For the reasons set forth herein, the motion is granted.

## I. BACKGROUND

This case originated in Portage County Court of Common Pleas on October 8, 2015 and was removed to this Court on October 26, 2015. (Doc. No. 1, Notice of Removal.) In his complaint (Doc. No. 1-2, Complaint ["Compl."]), plaintiff Leonard Hazelett ("Hazelett" or "plaintiff") alleges, under Ohio law only, that defendants discriminated against him on the basis of age when they terminated his employment and hired a younger person to replace him (Count I), and also retaliated against him for complaining about office policies favoring younger employees (Count II). Under 42 U.S.C. § 1983 and the Fourteenth Amendment, plaintiff also raises a federal claim of deprivation of a property right (his continued employment) without due process  (Count III).

Plaintiff identifies three defendants: (1) Dennis Day Lager, Portage County Public Defender ("Lager"); (2) Portage County, Ohio/Portage County Board of Commissioners (respectively, the "County" and the "Board"); and (3) Portage County Public Defender Commission (the "Commission").[1] Plaintiff alleges that the County "is responsible for adopting and authorizing the employment practices" of the Portage County Public Defender's Office (the "Office") and the Commission. (Compl. ¶ 3.) "The County is sued through the Portage County Board of Commissioners, which is named pursuant to [Ohio Rev. Code] § 305.12." (*Id.*)[2] Plaintiff further alleges that the Board appoints the Commission "to oversee the operations of the [Office]" and to "appoint[ ] the Portage County Public Defender." (*Id.* ¶ 4.) Plaintiff alleges that, for purposes of 42 U.S.C. § 1983, both the Board and the Commission are "persons" acting under state law. (*Id.* ¶¶ 3, 4.)

Hazelett alleges that he was hired as a senior attorney in the Office on August 18, 2008. His date of birth is January 31, 1954. (*Id.* ¶ 7.) Upon hire, Lager represented to Hazelett that he was required to serve a one-year probationary period and, following that period, his employment would be protected from termination absent just cause. (*Id.* ¶¶ 8-9.) Plaintiff allegedly "served as an excellent employee at the [Office], zealously representing his clients, and regularly receiving favorable feedback from his clients and peers." (*Id.* ¶ 10.)

---

[1] Although the individual members of the Board and the Commission are listed in the complaint's caption, in the body of the complaint, and among the list of parties on the docket, they do not appear to be named in anything other than their official capacities. (*See* Compl. ¶¶ 1-4.) There are no allegations directed specifically toward any of them as individuals. *See Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989) ("[P]laintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.") For that matter, there are also no allegations against defendant Lager in his individual capacity. The complaint merely alleges that he "is presently employed as the Portage County Public Defender[,]" and, at all relevant times, "was acting under the color of state law." (Compl. ¶ 2.)

[2] Section 305.12 provides, in relevant part, that "[t]he board of county commissioners may sue and be sued[.]"

Plaintiff "developed concerns regarding Lager's hostile treatment of Plaintiff and several other employees of the [Office]." (*Id.* ¶ 11.) He alleges that Lager "frequently displayed preferential behavior toward younger employees, including frequently conducting closed-door meetings and personal mentoring sessions with Mrs. Heather Ninni, the newest attorney at the [Office] who previously served as an intern to Lager." (*Id.* ¶ 12.) Lager also "allowed younger employees, including Mrs. Heather Ninni, to violate attendance and conduct policies without punishment[,]" (*id.* ¶ 13), and "maintained informal office policies, including but not limited to the 'bye week' system, that benefited younger attorneys at the expense of older attorneys[,]" (*id.* ¶ 14).

On January 19, 2015, "Lager demoted Plaintiff from his position as senior attorney to a general 'floater', indicating he was 'replacing' Plaintiff and transferring Plaintiff's previous docket to Mrs. Ninni, a significantly younger attorney." (*Id.* ¶ 15.) On March 4, 2015, "Plaintiff reported his concerns to Ms. Carol Crimi, an attorney, and a member of the [Commission]." (*Id.* ¶ 16.) Plaintiff "informed Ms. Crimi about the issues occurring in the [O]ffice and further informed her that he was concerned Lager was seeking an excuse to fire him so that Plaintiff would not be eligible to receive his retirement pursuant to the Ohio Public Employees Retirement System (OPERS)." (*Id.*) On March 12, 2015, "Ms. Crimi informed Plaintiff that he 'needed to turn elsewhere' and that the role of the Commission was limited to setting the budget and filing reports." (*Id.* ¶ 17.)

Subsequently, during a staff meeting, Lager confronted his staff with two issues: "(1) the local prosecutors' perception that Plaintiff had been discriminated against by Lager with respect to another member of the staff, Mrs. Heather Ninni; and (2) the fact that someone in the [Office] had been spreading slanderous allegations that Lager was having an inappropriate sexual

3

relationship with Mrs. Heather Ninni." (*Id.* ¶ 18.) Lager then "went around the room, pointing at each member of his staff, and asking each member of his staff whether they had reported these allegations to the Commission." (*Id.* ¶ 19.) "Plaintiff and at least one other employee informed Lager that they had spoken to Ms. Crimi, but that none of the employees had spread any such rumors." (*Id.* ¶ 21.) Lager threatened "to use any means available, legal or otherwise" "to identify and punish anyone involved in informing Ms. Crimi about his relationship with Mrs. Ninni." (*Id.* ¶¶ 20, 21.)

In early April 2015, plaintiff applied for and received a scholarship to attend a seminar on trial advocacy, which he had also attended in 2011 and 2013, at no cost to the Office. Lager confronted plaintiff about applying for and attending this seminar "without Lager's permission." (*Id.* ¶¶ 22-24.)

On May 4, 2015, plaintiff was placed on paid administrative leave pending a pre-disciplinary hearing relating to his alleged failure to obtain approval to attend the trial advocacy seminar. (*Id.* ¶ 25, 26.) At the hearing on May 8, 2015, Lager "informed Plaintiff that he was terminating his employment, but offered to allow him to resign 'voluntarily' if he would sign a separation agreement and release." (*Id.* ¶ 27.)[3]

Plaintiff received a letter terminating his employment effective May 15, 2015. (*Id.* ¶ 28.) Immediately thereafter, plaintiff was replaced by Mr. Eli R. Heller, a person nearly thirty years younger than plaintiff. (*Id.* ¶ 29.)

---

[3] The complaint does not indicate whether plaintiff accepted the offer to resign.

## II. DISCUSSION

### A. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal quotes and citation omitted). A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582 (quotes and citation omitted).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss [or for judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—

that the pleader is entitled to relief.'" *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Further, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B. Analysis**

Defendants have filed the instant motion seeking judgment on the pleadings as to the Board and the Commission, arguing that they were both improperly named since neither of them was plaintiff's employer. (Mot. at 129.)[4] The Board and the Commission seek dismissal of all claims against them.

Plaintiff's first two claims are raised under the Ohio statute that makes it "an unlawful discriminatory practice … [f]or any employer, because of the … age … of any person, to discharge without just cause …" Ohio Rev. Code § 4112.02(A), and/or for any person to retaliate against another for opposing unlawful discrimination, Ohio Rev. Code § 4112.02(I).

Defendants argue that neither the Board nor the Commission had an employment relationship with plaintiff. (Mot. at 130-31.) They assert that these are statutorily-created entities, with powers and duties circumscribed by law. They assert that, under Ohio Rev. Code § 120.14, there is no basis for plaintiff to claim an employer/employee relationship between himself and

---

[4] All page number references are to the page identification number generated by the Court's electronic docketing system.

6

the Commission because the statute gives the Commission no power to hire, fire, or otherwise alter the terms of employment of assistant public defenders, or to control the policies or procedures or the day-to-day operations of the Office. (*Id.* at 131.) They further argue that the Board's duties vis-a-vis the Office and its employees are even more removed than the Commission's in that the Board only approves certain actions of the Commission that have financial implications for the County. (*Id.*, citing Ohio Rev. Code § 120.14(F).)

The Board and the Commission argue that Lager is the appointing authority for assistant public defenders, that he is responsible for hiring and firing, and that he is "the only appropriate defendant in this lawsuit." (*Id.* at 132, citing Ohio Rev. Code § 120.15(B)(4).) That said, defendants deny that Lager "committed any wrongdoing and anticipate filing a separate dispositive motion on his behalf following the completion of discovery." (*Id.*, n. 2.)

In opposition, plaintiff argues, without citation to even a single paragraph of the complaint, that he has "plausibly state[d] a claim against [these defendants because he] … has alleged that Mr. Lager, the [Commission], and the [Board] have violated R.C. 4112." (Opp'n at 136-37.) He further argues that his "allegation that an employment relationship exists between himself, the [Board], and the [Commission] is, at the very least, plausible." (Opp'n at 137.) The problem with this argument is that there are no allegations in the complaint of an employment relationship between plaintiff and the Board and/or plaintiff and the Commission. Moreover, even if there were such allegations, as properly pointed out by defendants in their reply, the Court need not accept as true legal conclusions couched as factual allegations. (Reply at 149-50, citing *Bradley v. City of Cleveland*, No. 1:11CV781, 2012 WL 775106, at *2 (N.D. Ohio Mar. 7, 2012).)

Plaintiff further cites *Genaro v. Cent. Transp., Inc.*, 703 N.E.2d 782 (Ohio 1999) for the proposition that supervisors and/or managers can be liable under Ohio Rev. Code Chapter 4112. (Opp'n at 138.) Plaintiff asserts that, because Lager was employed by the Board and/or the Commission, either or both of these entities can be vicariously liable for his discriminatory conduct as his supervisor or manager. (*Id.*)

Plaintiff has not alleged under any appropriate statutory authority, and cannot do so, that *he* was employed by either the Board and/or the Commission. Nor has he alleged that either the Board or the Commission served as *his supervisor or manager*. Plaintiff misreads *Genaro*, which held that Ohio law does provide for claims against supervisors or managers in their individual capacity when they commit discriminatory acts for which the actual employer is held jointly and severally liable. *Genaro*, as defendants properly argue, did not "abrogate the requirement that an employment relationship must exist" between the plaintiff and the defendant. (Reply at 154.)

Judgment on the pleadings as to Counts I and II is warranted with respect to both the Board and the Commission and the same shall be granted.

Count III of plaintiff's complaint asserts a procedural due process claim under the Fourteenth Amendment and § 1983. The Board and the Commission argue that they are entitled to judgment on the pleadings because plaintiff has failed to allege any official government policy or custom that led to any deprivation of his rights. (Mot. at 132, citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (a governmental entity cannot be held liable on a theory of respondeat superior, but only if its own official policy or custom caused a constitutional deprivation).) They both assert that they have no authority to promulgate policies on behalf of the Office and, even if they had such authority,

8

plaintiff has failed to allege any policy that caused him to suffer deprivation of his property rights.

In opposition, plaintiff argues that his complaint "plausibly sets forth a *Monell* claim[]" because he alleged that he reported his concerns to Ms. Crimi, a member of the Commission, that defendants violated his constitutional right to procedural due process, and that the Commission "at the very minimum took an act, which most certainly represented official policy, when they voted to support Mr. Lager in firing Mr. Hazelett." (Opp'n at 139, citing Ex. B to the opposition.)[5] Plaintiff also argues, correctly, that "even a single act by a 'decision maker possess[ing] final authority to establish municipal policy with respect to the action ordered' may suffice in demonstrating that policy or custom." (Opp'n at 139, quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).)

The Court need not take plaintiff's *legal* assertions as true, and there are no *facts* in the complaint that allege a *Monell* claim against either the Board or the Commission. Nor would Exhibit B salvage the complaint, even *if* this Court were to consider it.

Exhibit B consists of minutes of a meeting of the Commission where the members "entertained a report from Mr. Lager on continuing personnel issues" including concerns about Hazelett and another attorney. At Lager's request for "a vote expressing their support or opposition to [his] position that [the two attorneys] should be separated from the office[,]" the Commission voted 3-1 "to support [Lager's] position[.]"

Given the statutorily-defined powers and duties of the Commission (*see* Ohio Rev. Code § 120.14), these minutes reflect no more than a type of second opinion or a vote of confidence

---

[5] The Court need give no consideration to the exhibits attached to plaintiff's opposition brief. The point of a motion for judgment on the pleadings is to test the sufficiency of the pleadings and, ordinarily, matters outside the pleadings are not to be considered. *Marsilio v. Vigluici*, 924 F. Supp. 2d 837, 846 (N.D. Ohio 2013).

given to Lager by the Commission. The minutes do not, and cannot, change the legal reality that the Commission's statutorily-defined powers and duties do not include hiring or firing personnel in the public defender's office and, further, do not include setting policy for that office. Even if the Commission had attempted to ratify Lager's actions by way of its "vote," as plaintiff argues when advancing his "single act by a decision-maker theory," that ratification would have been completely ineffective, given that the Commission has no such authority and cannot modify its authority by its own actions.

As to the Board, plaintiff alleges, without citation to any statutory authority, that "the County is responsible for adopting and authorizing the employment practices of the [Office] and the [Commission]." (Compl. ¶ 3.) This is no more than a legal conclusion masquerading as a factual allegation, and the Court need not accept it as true. In fact, although under Ohio law the Board has the authority to establish the Commission, *see* Ohio Rev. Code § 120.13(A), it has no day-to-day supervision over the Commission or over the Office. *See generally* Ohio Revised Code Chapter 305 (Board of County Commissioners – Generally); Chapter 307 (Board of County Commissioners – Powers). At most, the Board has the authority to approve the Commission's budget for the Office. *See* Ohio Rev. Code § 120.14(F). Plaintiff offers nothing in either his complaint or his opposition brief to support his conclusory assertions, much less to support any claim that the Board had any authority with respect to the decision to terminate his employment, or that the termination resulted from any policy, practice or custom of the Board.

Defendants are correct that the complaint fails to state a claim under *Monell* and, therefore, the Board and the Commission are entitled to judgment on the pleadings as to Count III, and the same shall be granted.

### III. CONCLUSION

For the reasons set forth above, defendants' motion for judgment on the pleadings on all counts of the complaint as to the Portage County Board of Commissioners and the Portage County Public Defender Commission (Doc. No. 16) is **granted.**

**IT IS SO ORDERED**.

Dated: September 21, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**